**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BRIAN J. MAY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 21 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN Q. LLOYD, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 71A05-1105-CR-270 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1004-MR-2

FEBRUARY 21, 2012

MEMORANDUM DECISION - NOT FOR PUBLICATION

**SULLIVAN, Senior Judge**

Appellant John Q. Lloyd appeals his conviction of murder, a felony. Ind. Code § 35-42-1-1 (2007). We affirm.

On the night of July 18, 2000, Lloyd was riding in a car in South Bend. His brother, Eric Johnson ("Eric"), was driving, and they were accompanied by their sister, Latonia Johnson ("Latonia"), and Jamie McCoy. They stopped at a closed gas station, and Eric and Lloyd went behind the building to urinate. At that time, Ed Dabros was using a pay phone at the gas station. When Eric and Lloyd returned to the front of the gas station, Dabros was sitting in his car and raised his hand in their direction. Eric was a drug dealer and recognized the gesture as a request for drugs or for information about drugs. Eric got into Dabros' car, and Lloyd stood near the car by the driver's side door. Dabros asked Eric for powder cocaine, and Eric told him that he only sold crack cocaine. Eric got out of Dabros' car and walked away. As Dabros shifted his car into gear, Lloyd shot Dabros in the back of his neck. Dabros' car rolled forward and struck a gate. Lloyd's gunshot went through Dabros' neck and cut his carotid artery, causing him to bleed to death.

Eric and Lloyd returned to Eric's car, where Latonia and McCoy had been waiting. Eric asked Lloyd, "[W]hat the f**k you do that for?" Tr. p. 467. Lloyd responded that he thought Dabros "was trying to do something." Id. Next, Eric drove to Latonia's house. He left Lloyd, Latonia, and McCoy at Latonia's house and went to see a friend, Rodney Mitchell. Eric and Mitchell came back to Latonia's house and collected Lloyd's gun and clothes. They put the clothes in a trash can and threw the gun into a river.

In 2005, Lloyd was incarcerated with Xavier McCaster. Lloyd told McCaster that he and Eric had gone to the gas station to sell drugs to "a white junkie." Id. at 440. Lloyd further stated that he had shot "the junkie" in the head because the man had "disrespected him." Id. at 440-41.

The State charged Lloyd with murder, felony murder, and dealing in cocaine. The trial court dismissed the charge of dealing in cocaine prior to trial. A jury found Lloyd guilty of murder and felony murder. The trial court dismissed the felony murder charge, entered a judgment of conviction on the murder charge, and sentenced Lloyd accordingly. This appeal followed.

Lloyd raises two issues, which we restate as: (1) whether the trial court abused its discretion by rejecting Lloyd's tendered instruction on mental culpability;[1] and (2) whether the evidence is sufficient to sustain the conviction.

## I. JURY INSTRUCTION

The manner of instructing the jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion. Boney v. State, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), trans. denied. In reviewing a trial court's decision to give or refuse tendered jury instructions, the appellate court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the

---

[1] The instruction differentiated between a "knowing" requirement for the defendant's conduct, as opposed to "recklessly" or "negligently."

3

substance of the tendered instruction is covered by other instructions that are given. Corbett v. State, 764 N.E.2d 622, 629 (Ind. 2002).

In this case, Lloyd tendered, and the trial court rejected, a proposed Instruction Number 3. That instruction provides:

> Knowingly is defined by statute as follows:
> A person engages in conduct "knowingly" if, when he engages in this conduct, he is aware of a high probability that he is doing so.
> The charge in this case alleges that the accused acted "knowingly." "Knowingly" is not the same as "recklessly" or "negligently". [sic] A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. "Negligence [sic] is a failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of some thing which a reasonably careful and prudent [sic] would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable or ordinary care.
> Proof that the accused acted "recklessly" or "negligently" does not satisfy the State's obligation to prove beyond a reasonable doubt that the accused acted "knowingly". [sic]

Appellant's App. p. 157.

The trial court properly rejected Lloyd's proposed instruction because the substance of the instruction is covered by other instructions that the trial court gave to the jury. The trial court informed the jury that the crime of murder includes a mental state of "knowingly." Id. at 189. In addition, the trial court read the jury a definition of "knowingly" that is identical to the definition in Lloyd's tendered instruction. Next, the jury was instructed that the State was obligated to prove every element of the crime beyond a reasonable doubt. Finally, the trial court instructed the jury on the crime of reckless homicide as a lesser included offense of murder.

4

Lloyd notes that the trial court's instructions did not address negligence. For guidance on this point, we turn to our Supreme Court's decision in Springer v. State, 798 N.E.2d 431 (Ind. 2003). In that case, Springer went to a house to confront a person who had allegedly beaten Springer's son the night before. While he was at the house, Springer fired a shot, which went through a wall and a refrigerator before striking the victim in the chest. Springer was convicted of criminal recklessness. At trial, Springer tendered to the trial court a jury instruction defining negligence. The trial court rejected the negligence instruction, and our Supreme Court affirmed that decision. Our Supreme Court noted that Springer's main argument at trial was that his actions did not meet the legal definition of recklessness. Thus, Springer's argument was a challenge to the sufficiency of the evidence rather than "a legal defense." Id. at 435. Our Supreme Court concluded that the jury did not need to be instructed on negligence.

In this case, as we discuss in more detail below, Lloyd contends that the State did not prove that he knowingly shot Dabros because he believes that the evidence showed that he shot Dabros accidentally. Thus, Lloyd is challenging the sufficiency of the evidence rather than asserting a legal defense. In addition, Lloyd's proposed definition of negligence is nearly identical to the definition at issue in Springer. Applying our Supreme Court's reasoning in Springer, we conclude that Lloyd was not entitled to a jury instruction on negligence but was free to argue to the jury that the shooting was accidental. Therefore, the trial court did not abuse its discretion by rejecting Lloyd's proposed Instruction Number 3.

5

## II.  SUFFICIENCY OF THE EVIDENCE

When an appellant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011).  We consider only the probative evidence and reasonable inferences drawn from the evidence that support the verdict.  Id. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.  Id.

In order to convict Lloyd of murder, the State was required to prove beyond a reasonable doubt that (1) Lloyd (2) knowingly or intentionally (3) killed (4) Ed Dabros. Ind. Code § 35-42-1-1.  Here, Lloyd does not dispute that he fired the gunshot that ended Dabros' life.  Instead, he contends that there is insufficient evidence to prove that he knowingly or intentionally killed Dabros.

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.  Ind. Code § 35-41-2-2(b) (1977). Knowledge is a mental state of the actor and may be proved by circumstantial evidence and inferred from the circumstances and facts of each case.  Wilson v. State, 835 N.E.2d 1044, 1049 (Ind. Ct. App. 2005), trans. denied.

In this case, Lloyd shot Dabros in the back of his neck, behind his left ear, at close range.  Without objection, McCoy testified that she heard Lloyd tell Eric he shot Dabros because he thought Dabros "was trying to do something."  Tr. p. 467.  In addition, McCaster testified, also without objection, that Lloyd said that he shot Dabros because

6

Dabros had disrespected him. Both of these statements, although not identical, are evidence that Lloyd knowingly or intentionally, rather than accidentally, shot Dabros. Furthermore, Lloyd left Dabros to die after the shooting instead of attempting to aid him, which, at least by inference, provides additional evidence that the shooting was not an accident.

Lloyd notes that Eric testified that the shooting was accidental. This is a request to reweigh the evidence, which we cannot do. There is sufficient evidence to establish that Lloyd knowingly or intentionally killed Dabros, and Lloyd's challenge to the jury's verdict is without merit.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and BAILEY, J., concur.